The Court then delivered the .following decree:
The first question then for consideration is, whether 'this property is to be considered as real or personal estate, at the death of the wife ? This is the Case of a. will, and the intent of the testator must guide us if it applies to the question.
■ It appears to me that the testator did plainly intend to change this land into personal property. He directs it to be sold, on his youngest son’s coming of age, and the money to be divided between his wife and children. The sale is suspended, but the ultimate destination is to make the bequest pecuniary. The right of the wife was not to any part of the land, but to part of the proceeds of its sale j and being a vested legacy, which is not 'denied, her proportion will go to whoever is entitled to it by law. The main question then is, who is entitled to the share which devolved on Mrs. Byrne ? Mr. Byrne claims the whole, either under his marital rights, or under his administration, without liability to account. His marital rights cannot give him this property, because it was not reduced to possession ; nor could it be, for the sale did not take place till after her death ; and the question before the Court relates to her share of the amount of sales. Is he entitled to it under his adminis- *144 ®’a^011 wife’s estate and effects, without any^iabi-lity to account,? It is said that this would have been the clear state of his rights, under the law, if the act of 1791, for the abolition of the rights of primogeniture, had not intervened; and that this act does not take away or alter ^ rjgjj^g 0f tj)0 husband : that the act contemplates a division of real estate, and the clause respecting personal estate appears, it is said, to have slipped in by mistake or inadvertence. 1 admit that in all doubtful cases it is proper to look, as has been urged, at the preamble, and to seek light from whatever quarter it may be got. But what is the object of the search ? It is to discover what the law makers intended. The moment that discovery is made, all further enquiry is at an end, for that intention must govern, unless it be in hostility tc some constitutional regulation. Now the clauses on this subject, in the act of If 91, are as clear and as explicit as possible. They are as follows : ic On the death of any married woman the husband shall be entitled to the same share of her real estate as is herein given to the widow out of the estate of the husband, and the remainder of her real estate shall be distributed among her descendants and relations in the same manner as is heretofore directed in case of the intestacy of a married man.” ie In all cases of intestacy the personal estate of the intestate shall he distributed in the same manner as real estates are disposed of by this act.”
It is manifest, from these clauses, 1st, that the husband’s rights in the real estate of the wife are put on the same footing as those of the wife in the husband’s i*eai estate. 2d. That personal estate is put on the same footing as real estate, in the division of intestates’ estates. As there could be no doubt with respeetto the real, there can he none as to the personal. It is, however, contended that there is no direct repeal of the law in favor of the husband’s rights to the property of his wife, not reduced to possession at the time of her death; a right founded on the common law and fortified by the statute, which however was unnecessary.
From this decree there was an appeal, on the ground, <¡ That the husband, either by virtue of his marital rights, or as administrator of jiis late wife, is entitled to her whole interest and estate, whatever it may be, in the lot of land and premises aforesaid.”
21st Nov. 1810.
"Winsanx.ev, sol. for comp’t.
The appeal came to a hearing in March, .and was argued by Mr. W. L. Smith for appellant, and Mr. Che-ves for respondent.
; Mr. Smith contended that this property should be considered to bo personal estate. The testator manifestly meant to convert the lot of land into personalty. He connects it with personalty in the direction for a division. The land is directed to be sold at all events, and the money is to be divided. The postponement of .the sale till the youngest son attains twenty-one years does not alter tlie case. See 2 P. Wms. 322, Doughty and Bull; 3 P. Wms. 211; 3 Atk. 448. In this Court the same point was decided in Drayton and Drayton.
*145 TIs '-’e are two modes of repealing laws; one by direct and distinct repeal, sometimes substituting another provision in the room of that which is abrogated, and sometimes simply by l’epeal: the other, by introducing a new rule inconsistent with and contradictory to the former rule. This, by implication, repeals the former. Both cannot subsist together, and the maxim of law and of reason is, leges posteriores priores abrogant. In the case before us a new rule is introduced, different from the old rule and abrogates it. The court of common pleas appears, in the case of Speight vs. Holloway, administrator of Meggs, to have taken this view of the subject. I think it is the right view. But as no solemn decision of this point has been made in this Court, I should be glad to have it settled by the judgment of the whole Court. It is ordered and decreed, that the defendants do account with and pay over to complainant one third part of that proportion of the nett amount of sales of the lot in question, to which his late wife, Mrs. Byrne, was entitled, under the will of her fir'st husband, Thomas Stewart.
2 Atk. 562, 8. If the testator orders his executor to gejj rea] esta^e> this converts it to money, and it will go as personal estate. The act of 1791, abolishing the rights of primogeniture, has no application. The statutes of 22d and 29th, Car. 2d, were not repealed by the act of 1791, and must have operation. It was decided by Lord Ch. Macclesfield, that the husband should he within the statute (of distributions) as to his interest, but not to his prejudice. So Lord Cowper. The point has been decided by this Court; Peyre vs. Jervey, 2d vol. of Decrees, 239. Claims for the surviving husband tiio whole that the wife was entitled to, by virtue of the marital rights j and repeated the arguments used before the Circuit Court.
Mr. Ciieves, for respondent,
stated that the decision in Doughty and Bull only settled a doubt, by deciding that a power given to sell, and a power to sell at discretion, means the same thing. The general principle is, that real estate, so disposed of, is considered as personal from the death of the testator. But this does not apply to a case where the testator directs the estate to continue as real estate till the death of the youngest son, a period of nearly twenty-one years : then any of the children dying, during the continuance of the real estate, their share to he considered as real estate, and to be divided accordingly, So the wife’s share. There was no power to sell till the youngest child should attain the age of 21 years, if it had lived.
But if the property should be considered as personal estate, the husband, surviving his Vvife, must come in under the primogeniture law for a proportion only. If is true that this Court and the Court of Law have decided this point differently. This Court (in the case of Peyre) was in favor of the marital rights to the old extent : the Court of Law- has restricted them (in the case of Speights and Holloway, in 1805, at Columbia) to the precise limits marked by the act of 1791, abolishing the rights of primogeniture, and for the division of real and personal estates; and it is proper there should be an uniformity of decision. The English statute of distributions did provide for the wife’s right to a third part ofJ the intestate husband’s personal property, but made no provision on the subject of the wife’s dying intestate, (as she must unless specially permitted to make a will.) The common law rule, therefore, must then prevail, in the case of the wife dying intestate, and the husband would take all: so that there really was no reason for the statute of frauds declaring, that the statute of distributions did not extend to the case of the wife’s estate.. 2d Blackst. 514. But our act of 1791 provides expressly how the real estate of the wife shall be divided, on her decease, among her husband and other relations ; and then declares that the personal estate shall, in cases of intestacy, he divided in the same manner as the real estate. Admitted that if the right had vested in the wife during her life, and had been reduced to possession, the marital rights would have attached, and the property become absolutely the husband’s. But the property in question had not so vested, and therefore was subject to the operation of the act of 1791. But if a vested legacy, still not to take effect till events, which never took place in her life, and therefore not reduced to possession for the marital rights to attach upon. The act of 1791, for abolishing the rights of primogeniture and the more equal division of intestates’ estates, does lay down a new rule of property, different from the old et leges, poste-riores priores abrogant.
After the argument, the Court, composed of Chancellors James, ThompsoN, Desaussuee and Cíaíxiaiid, (Chancellor Rutiebge being recently dead) were unanimously of opinion that the decree of the Circuit Court ought to be affirmed.
*148 The entry in the decree book of the Court of Appeal» isi as follows :
“ The administrators of Mary Byrne vs. Porter and wjfe administratrix of Stewart. Miss Elms vs. Arthur Hughes. Court of Appeals, March 15, 1811.
(C fliese causes, turning on the same question, were argued together. From the 10th clause of the first section of the act abolishing the rights of primogeniture, which says that « on the death of any married woman the husband shall be entitled to the same share of her real estate as is herein given to the widow out of the estate of the husband,” it is clear that a married woman may die intestate as to real estate, and it is equally clear from the 2d section of that act, that she may die intestate as to personal estate. This section enacts, in general terms, <e that in ail cases of intestacy, the personal estate of the intestate shall be distributed in the same manner as real estates are disposed of by this act.” The only point to be determined is, Whether the husband jure mariti became entitled, on the death of his wife, to her personal estate n'ot reduced by him into possession during the coverture ? or whether such estate must be considered as belonging to the wife, and be distributed in the manner directed by the above act. The Court are unanimously of opinion, that the personal estate of the wife, not reduced into possession by the husband during the coverture, must be considered as her estate, and consequently, that it must be distributed according to the act of 1791, abolishing the rights of primogeniture,, and for other purposes.
^ March 15,1811. Decree affirmed.”